# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

SEITHER & CHERRY QUAD CITIES, INC.,
An Iowa corporation,

       Plaintiff,

v.

OAKLAND AUTOMATION, LLC
a Delaware limited liability company, and
OAKLAND INDUSTRIES BLOCKER CORP.,
a Michigan corporation

       Defendants, jointly and severally.
_____/

Case No. 4:23-cv-11310

Hon. F. Kay Behm

Mag. Judge Curtis Ivy, Jr.

TISHKOFF PLC
By: William G. Tishkoff (P45165)
And: Christopher M. Vukelich (P76420)
And: Dylan M. Timmer (P81265)
*Attorneys for Plaintiff*
407 North Main Street
Ann Arbor, MI 48104
(734) 663-4077
will@tish.law
chris@tish.law
dylan@tish.law

HOWARD & HOWARD
ATTORNEYS PLLC
By: Mark C. Vanneste (P73001)
*Attorneys for Defendant Oakland Industries Blocker Corp.*
450 W. Fourth Street
Royal Oak, MI 48067
(248) 645-1483
mv@h2law.com

_____/

## SECOND AMENDED COMPLAINT & JURY DEMAND

NOW COMES Plaintiff Seither & Cherry Quad Cities, Inc., through its attorneys, Tishkoff PLC, and, for its second amended complaint against Defendant Oakland Industries Blocker Corp., states:

## PARTIES

1.      Plaintiff Seither & Cherry Quad Cities, Inc. ("S&C") is an Iowa corporation that is an industrial contractor who specializes in the removal, modification and installation of heavy machinery, with principal offices located in the City of Davenport, County of Scott, State of Iowa.

2.      Defendant Oakland Industries Blocker Corp. ("OIB") is a Michigan corporation that specializes in multi-technology industrial automation and process equipment with its headquarters and principal offices located in the City of Plymouth, County of Wayne, State of Michigan.

## JURISDICTION AND VENUE

3.      Pursuant to 28 USC §1332(c)(1), *inter alia,* S&C is a citizen of the State of Iowa because, as a corporation, it was incorporated, and has its principal place of business, in the State of Iowa.

4.      Pursuant to 28 USC §1332(c)(1), *inter alia,* OIB is a citizen of the State of Michigan because, as a corporation, it was incorporated, and has its principal place of business, in the State of Michigan.

5.      Pursuant to 28 USC §1332(a), *inter alia*, this Court has original jurisdiction over the above-captioned parties, as the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and is between citizens of different States.

6.      Pursuant to 28 USC §1391(b), *inter alia*, upon information and belief,

venue of the instant action is proper in this Court, as the Defendant is a resident of the State of Michigan where the district for this Court is located, and a substantial part of the events and transactions at issue in the instant claim occurred.

## **GENERAL ALLEGATIONS**

7. Oakland Automation, LLC ("OA") is a Delaware limited liability company that engaged in the design, installation, engineering and integration of robotic systems.

8. In the first half of 2022, OA contracted with Toyota Motor Manufacturing ("TMM") for the installation of five (5) robotics projects at three TMM locations (collectively, the "Toyota Projects"): (a) Toyota Motor Manufacturing Indiana, Inc., 4000 Tulip Tree Drive, Princeton, Indiana ("TMMI"); (b) Toyota Motor Manufacturing, Kentucky, Inc., 1001 Cherry Blossom Way, Georgetown, Kentucky ("TMMK"); and (c) Toyota Motor Manufacturing, Texas, Inc., 1 Lone Star Pass, San Antonio, Texas ("TMMTX").

9. Beginning on May 13, 2022, OA entered into contracts with S&C for S&C to provide the millwright scope of work for the Toyota Projects; collectively attached as Exhibit A are the related quotes, purchase orders and invoices (the "Subject Contracts").

10. While OA made partial payments to S&C for some of the Subject Contracts, OA failed to pay S&C a total amount of the $710,096.11 for the

3

following fourteen (14) invoices included in the Subject Contracts: eleven (11) invoices totaling $638,157.68; one (1) invoice in the amount of $46,159.33; and two (2) invoices totaling $25,779.10 (collectively, the "Unpaid Invoices").

11. As verified by affidavit of Zachery Hungate, attached as Exhibit B (the "S&C Affidavit"), OA's stated account with S&C for the Toyota Projects has an undisputed balance due of $710,096.11.

12. On May 3, 2023, S&C, through its counsel, notified OA by letter that it was indebted to S&C for, and had an overdue balance of, $710,096.11, and S&C demanded payment by May 17, 2023 (the "Demand Letter"). A copy of the Demand Letter is attached as Exhibit C.

13. OA failed to pay S&C any of its above debt and overdue account.

14. During times material to this case: OIB and OA comingled and materially combined their businesses and operations; OIB's CEO, Greg Harvey, concurrently served as the authorized and empowered representative and CEO of both OA and OIB; and the comingling of OIB and OA's businesses was done for the purpose of deceiving, and fraudulently inducing third-parties, including S&C, into entering into contracts with OA, and performing related services for OA, that OIB and OA knew OA would not pay for as agreed upon, enriching and benefiting OIB.

15. During times material to this case, in addition to Mr. Harvey, other

representatives and officers of OIB also exercised, or facilitated the exercise, of direction and control of OA's conduct and business activities.

16. Beginning in or about the first quarter of 2021 and thereafter, OIB's representatives and officers knew that OA was insolvent and could not perform its contracts with contractors who performed certain work on the Toyota Projects for the benefit of OA and/or OIB , such as S&C.

17. OA, under the control of OIB, knew it was insolvent and developed a plan – the "Oakland 100" initiative – where OA would solicit and sell $100 million in contract revenue by signing contracts, including the Subject Contracts, which could not be performed by OA.

18. In connection with the above, several of the above purchase orders submitted to S&C as part of the Subject Contracts were executed by officers, representatives or agents of OIB.

19. During the period of May 13, 2022, through November 10, 2022, OA submitted a combined total of twelve (12) purchase orders to S&C for the purpose of inducing S&C into performing the work on the Toyota Projects stated in the above purchase orders.

20. Of the above purchase orders, three (3) – PO 4172, dated October 28, 2022; PO 4176, dated October 28, 2022; and PO 4308, dated November 10, 2022 – were issued by Jeff Behr of OIB, which he executed on behalf of OA.

21. All twelve (12) purchase orders for the Subject Contracts provide, "By accepting this PO, vendor agrees to terms and conditions set forth by Oakland Industries; parent company to Oakland Automation, VSII, Autotac, and InterClean Equipment. Find General Terms and Conditions here: https://www.oaklandind.com/terms-and-conditions/."

22. At the time the Subject Contracts were entered into and thereafter, accessing the above internet link on the above purchase orders opens a page on OIB's website with the terms and conditions for the Subject Contracts.

23. OA's submission of the above purchase orders to S&C, under the control of OIB, created in S&C the false impression that OA had sufficient capitalization and capacity to perform the requirements of the Subject Contracts, including compensating S&C as required by the Subject Contracts.

24. When OA entered into the Subject Contracts and represented it could perform the requirement of the Subject Contracts and would make payments to S&C pursuant to the Subject Contracts, OA and OIB knew that OA was undercapitalized, lacked sufficient capital and assets, and would not be able to perform OA's contractual obligations required by the Subject Contracts.

25. Neither OA nor OIB disclosed to S&C that OA was undercapitalized and could not fulfil its obligations pursuant to the Subject Contracts.

26. OA, under the control of OIB, intentionally, or recklessly, induced

S&C into entering into the Subject Contracts by, *inter alia,* omitting and/or suppressing, and failing to timely disclose, material facts in its possession or knowledge relating to OA's insolvency.

27. During times material to the instant action, OIB received value or assets from OA, whether by any of services, funds, equipment or business relationships, that OIB did not adequately compensate OA for, and for which OA did not receive adequate consideration.

28. During times material to the instant action, TMM paid OA for labor and materials provided in the Toyota Projects.

29. During times material to the instant action, upon information and belief, OA and OIB comingled the above payments received from TMM, payments which should have been held in trust for the benefit of OA's contractors such as S&C.

30. Upon information and belief, OA, under the control of OIB, appropriated and converted funds received from TMM for OA and/or OIB's own benefit prior to paying the contractors, laborers, and suppliers who worked on the Toyota Projects first having been paid, including S&C.

31. Currently, OIB does not publicly disclose any: officers, working location, premises, telephone numbers, or e-mail addresses.

32. OA is dominated and controlled by OIB such that OA is a mere tool

and instrumentality of OIB, commingling and sharing financing and business operations.

33. OIB utilized OA as its alter ego to mislead and defraud S&C.

34. Unsecured creditors and claimants of OA, including S&C, suffered loss and injury as a direct result of the above alter ego actions by OA and OIB.

35. OIB's above conduct and omissions caused S&C significant damages, including economic loss in excess of $700,000, lost business opportunities, damage to business reputation, interest, attorney fees, costs and expenses.

## COUNT I

## UNJUST ENRICHMENT

### [Defendant Oakland Industries Blocker Corp.]

36. S&C incorporates the above allegations as if fully stated herein.

37. With the full knowledge of OIB, S&C performed certain work on the Toyota Projects.

38. OIB received a benefit from S&C, particularly where it received and/or benefited from S&C's performance of certain work on the Toyota Projects.

39. During times material to the instant action, OIB benefitted from TMM having paid OA for labor and/or materials necessary to hire subcontractors to complete the Toyota Projects.

40. OIB unjustly retained the above benefits of S&C's work and TMM's

payments before first paying laborers, subcontractors, or materialmen engaged by OA to perform labor on (or furnish material for) the Toyota Projects, such as S&C.

41. It is unjust and inequitable for OIB to have retained the above benefits without properly compensating S&C for S&C's performance of the subject work on the Toyota Projects.

### COUNT II

### VIOLATION OF THE MICHIGAN UNIFORM VOIDABLE TRANSACTIONS ACT, MCL 566.31 et seq.

**[Defendant Oakland Industries Blocker Corp.]**

42. S&C incorporates the above allegations as if fully set forth herein.

43. OIB received the above transfers of assets or value from OA, beginning during the first quarter of 2021 during the establishment of OA's "Oakland 100" initiative and continuing through July 2023, while OA was insolvent, and with intent to hinder, delay, and defraud OA's creditors and claimants, including S&C.

44. OIB received the above transfers of assets or value from OA, without OA receiving equivalent value in exchange, and where: (i) OA was engaged in a business and transaction for which the remaining assets of OA were unreasonably small in relation to the above business and transaction; and (ii) OA intended to

9

incur, or believed or reasonably should have believed that OA would incur, debts beyond OA's ability to pay as they became due.

45.     S&C's rightful claim against OA for the Unpaid Invoices arose before the above  transfers of assets or value from OA to OIB were made, while OA was insolvent, and OA made the transfers of assets or value to OIB without receiving from OIB a reasonably equivalent value in exchange for the transfers.

46.     OA's above transfers of assets or value to OIB are voidable under the Michigan Uniform Voidable Transactions Act ("UVTA"), pursuant to MCL §§ 566.34 and 566.35.

## COUNT III

## CIVIL CONSPIRACY

**[Defendant Oakland Industries Blocker Corp.]**

47.     S&C incorporates the above allegations as if fully set forth herein.

48.     During times material to the instant action, OIB combined with OA and engaged in the above tortious and unlawful acts, resulting in harm and injury to S&C.

WHEREFORE, S&C respectfully requests the entry of a judgement against OIB, and in favor of S&C, providing the following relief:

A.     Awarding S&C its actual, consequential, and compensatory damages, including its damages for economic loss in excess of $700,000, damage to business

reputation, lost business opportunities, interest, attorneys' fees, costs and expenses;

B. Awarding S&C its attorneys' fees and costs incurred in the instant matter;

C. Awarding S&C equitable relief, including the disgorgement of benefits received, and unjustly retained, by OIB;

D. Awarding S&C pre-judgement interest and post-judgment interest, costs and expenses; and

E. Awarding other relief as allowed by applicable statute, court rule, or common law, as this Court deems just and equitable.

    Respectfully submitted,

    Tishkoff PLC

    /s/ Dylan M. Timmer
    By: William G. Tishkoff (P45165)
    And: Christopher M. Vukelich (P76420)
    And: Dylan M. Timmer (P81265)
    Attorneys for Plaintiff
    407 North Main Street
    Ann Arbor, MI 48104
    (734) 663-4077
    November 20, 2023

## **JURY DEMAND**

NOW COMES Plaintiff Seither & Cherry Quad Cities, Inc., through its attorneys, Tishkoff PLC, and hereby demands a trial by jury of all triable issues in the above matter.

        Respectfully submitted,

        Tishkoff PLC

        /s/ Dylan M. Timmer
        By: William G. Tishkoff (P45165)
        And: Christopher M. Vukelich (P76420)
        And: Dylan M. Timmer (P81265)
        Attorneys for Plaintiff
        407 North Main Street
        Ann Arbor, MI 48104
        (734) 663-4077
        November 20, 2023